UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER    MARTIN,    an
individual,

      Plaintiff,

v.                                    Case No: 2:13-cv-393-FtM-29DNF

ESTERO    FIRE    RESCUE,    a
political subdivision of the
State  of  Florida  and  SCOTT
VANDERBROOK,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on the Defendants' Joint Dispositive Motion for Summary Judgment (Doc. #39) filed on May 7, 2014. Plaintiff filed a Response (Doc. #43) on June 3, 2014. With leave from the Court, Defendant filed a Reply (Doc. #49) on June 25, 2014 and Plaintiff filed a Surreply (Doc. #50) on June 30, 2014. For the reasons set forth below, the motion is granted.

**I.**

Plaintiff Christopher Martin (Plaintiff or Martin) has filed a six-count Amended Complaint (Doc. #30) against Defendants Estero Fire Rescue (EFR) and EFR Fire Chief Scott Vanderbrook (Vanderbrook). Martin alleges that EFR unlawfully discriminated and retaliated against him in violation of the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act of 1992 (FCRA). (Id.) Martin further alleges that both EFR and

Vanderbrook (Defendants) deprived him of his constitutional right to equal protection in violation of 42 U.S.C. § 1983 (Section 1983). (<u>Id.</u>)

Martin was hired by EFR in 2007 as a firefighter and EMT. (Doc. #43, p. 3.) On July 20, 2012, Martin confided in an EFR co-worker that he would not pass a drug test if sent for one. (<u>Id.</u> at p. 7.) On July 23rd, Martin's co-worker relayed that information to a supervisor, who immediately sent Martin for a drug test and placed Martin on administrative leave pending the results. (<u>Id.</u>) The following day, Martin told Vanderbrook that he had smoked marijuana in the days leading up to his drug test. (<u>Id.</u>) On July 30th, Defendants received confirmation that Martin had tested positive for marijuana. (<u>Id.</u>) Upon receiving the results, Vanderbrook decided that he would terminate Martin pending the results of an investigation and due process hearing regarding the positive test. (<u>Id.</u>) During the course of the investigation, Martin admitted to EFR's investigator that he used marijuana "a handful of times" in July 2012. (<u>Id.</u> at p. 8.)

All EFR employees are subject to a Drug Free Workplace Policy (the Policy) and EFR employee discipline is governed by a Disciplinary Matrix (the Matrix). (Doc. #39-5, Ex. D.) The Policy states that "[i]t is a condition of employment to refrain from taking illegal drugs on or off the job." (<u>Id.</u>) The Policy provides for various forms of discipline for positive drug tests, including required attendance at a rehabilitation program, demotion,

2

probationary employment, immediate discharge, and other reasonable discipline. (Id.) The Matrix, which serves as a guideline, recommends that an individual who violates the Policy receive a five-day suspension for his first offense followed by termination for any subsequent offenses. (Id.)

The Policy provides separate procedures for employees who have substance abuse problems but come forward and seek help prior to being required to submit to a drug test. (Id.) Employees who self-disclose their substance abuse problems may be reassigned and will be subject to future follow-up testing, but are not subject to discipline for their initial disclosure. (Id.)

As part of their investigation into Martin's positive drug test, EFR held an interview with Martin and his attorney on August 7, 2012. (Id. at p. 9.) At that interview, Martin for the first time informed EFR management that he suffers from depression and anxiety with flare-ups of bi-polar tendencies. (Id.) Martin requested an accommodation, in the form of a discipline waiver and leave to seek treatment, on account of these ailments. (Id.) Defendants denied Martin's request and terminated his employment pursuant to the Policy. (Id. at p. 10.)

Martin contends that Defendants' decision to terminate him violates the ADA, FCRA, and his right to equal protection. (Docs. ##30, 43, 50.) Specifically, Martin alleges that his anxiety and depression constitute a disability and, accordingly, the ADA and FCRA required Defendants to provide him a reasonable accommodation

(here, a discipline waiver and leave to seek treatment). (Id.) Therefore, according to Martin, Defendants' decision to terminate him denied him his right to a reasonable accommodation and served as impermissible retaliation for invoking his ADA and FCRA rights. (Id.) Additionally, Martin argues that his termination was racially motivated. Martin, who identifies himself as bi-racial, asserts that various Caucasian EFR employees also failed drug tests but, unlike him, were not terminated. (Id.) Defendants now move for summary judgment, arguing (1) that Martin does not qualify for FCRA and ADA protection; and (2) that race played no role in their treatment of Martin. (Docs. ##39, 49.)

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if

4

reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.

### A. Plaintiff's ADA and FCRA Discrimination Claims (Counts One and Two)

The FCRA is to be construed in conformity with the ADA. Albra v. Advan, Inc., 490 F.3d 826, 835 (11th Cir. 2007). Accordingly, analysis of FCRA claims is identical to analysis of ADA claims, and federal case law interpreting the ADA is applicable to claims arising under the FCRA. Reis v. Univ. City Develop. Partners, Ltd., 442 F. Supp. 2d 1238, 1243 (M.D. Fl. 2006) (citing Wimberly v. Sec. Tech. Group, Inc., 866 So. 2d 146, 147 (Fla. 4th DCA 2004)); Stanley v. Lockheed Martin Corp., No. 11-CV-1649, 2013 WL

3974655, at *12 (M.D. Fla. Aug. 1, 2013) (same). Thus, the Court will address Martin's ADA and FCRA claims together.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter." Id. § 12203(a). Martin brings both discrimination claims (Counts One and Two) and retaliation claims (Counts Three and Four).

"[T]o establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that (1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability." D'Angelo v. ConAgraFoods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005) (quotations omitted).

The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more major life activities . . . a record of such an impairment . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(1). In

6

turn, "major life activities" is defined to include "major bodily function[s] including, but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).

Here, Martin has alleged that he meets each of the ADA's three possible definitions of disability. Specifically, Martin alleges (1) that his anxiety and depression "substantially limits . . . [his] emotional system, which seriously impacts life activities;" (2) that he has a record of such impairments; and (3) that Defendants regarded him having such impairments (Doc. #30, ¶¶ 13, 41.) The Court finds, however, that Martin has not provided a sufficient basis for a reasonable jury to conclude that his depression and anxiety constitute a disability under any of the three options.

## 1.   Actual Disability

Martin alleges that his anxiety and depression "substantially limits . . . [his] emotional system, which seriously impacts life activities." (Id. at ¶ 13.) As an initial matter, Martin offers no evidence other than his own testimony demonstrating that he suffers from depression and anxiety. Although Martin testified that he discussed his mental health symptoms with a doctor, he provides neither medical records nor testimony from a health professional stating that he has been diagnosed with depression

and/or anxiety.[1]   (Doc. #39-1, pp. 61-63.)   Instead, Martin's disability claim rests on his affidavit, which merely states that he "suffer[s] from documented disabilities, including depression with flare-ups of bi-polar tendencies."   (Doc. #43, pp. 16-17; Doc. #43-1, ¶ 13.)  This is insufficient to avoid summary judgment. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.")

Moreover, even assuming that Martin suffers from depression and anxiety, there is no evidence in the record demonstrating that these ailments limit one of Martin's major life activities.   The Amended Complaint alleges that Martin's depression and anxiety limit the function of his emotional system, but does not provide any additional detail regarding the impact Martin's alleged depression and anxiety have on his day-to-day life. (Doc. #30, ¶ 13.)   Similarly, Martin's response to Defendants' motion for summary judgment simply states that Martin's depression and anxiety "have been documented to affect major life activities or bodily systems, such as the emotional/psychological system." (Doc. #43, p. 17.)  The only evidence cited by Martin in support of this contention is his conclusory testimony that he "suffer[s]

---

[1] Martin testified that he sought counseling and psychotherapy from Dr. David M. Smith.  (Doc. #39-1, p. 63.)  However, Dr. Smith's records do not reflect a diagnosis of depression or anxiety (Doc. 39-3, pp. 21-29) and Martin does not cite to the records in support of his disability allegations.

from documented disabilities, including depression with flare-ups of bi-polar tendencies." (Doc. #43, p. 17; Doc. #43-1, ¶ 13.) However, Martin cites to no such documentation and a review of the record does not reveal any additional uncited evidence demonstrating that the function of Martin's emotional or psychological systems is substantially limited.

While Martin testified that his depression negatively impacted his decision-making ability, his sleep, his appetite, his personal motivation, and his interpersonal skills, he also acknowledged that it did not prevent him from performing his job at EFR, carrying on relationships with his girlfriend and family, socializing, or caring for himself. (Doc. #39-1, pp. 63-65, 76-81.) Although the relevant Equal Employment Opportunity Commission (EEOC) regulations provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expensive coverage," they also caution that "[n]onetheless, not every impairment will constitute a disability under [the ADA]." 29 C.F.R. § 1630.2(j). Here, Martin has provided no evidence that would allow a reasonable jury to reasonably conclude that his alleged impairments substantially limit a major life activity. See Cash v. Smith, 231 F.3d 1301, 1306 (11th Cir. 2000) (plaintiff who suffered from depression was not disabled under the ADA where plaintiff testified that she "consider[ed] herself an active person who walks, swims, fishes, and had held a 40-hour-a-week job for the previous eight years"). Accordingly, Martin's ADA and

FCRA claims cannot proceed under the "actual disability" prong of the ADA's disability definition.

## 2.    **A Record of Disability**

The relevant EEOC regulations provide that "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).  Here, Martin has provided no such records and, as discussed above, Martin has provided no evidence that would allow a reasonable jury to reasonably conclude that his depression and anxiety substantially limit a major life activity.  Accordingly, his ADA and FCRA claims cannot proceed under the "record of" prong of the ADA's disability definition.

## 3.    **Regarded as Disabled**

Under the "regarded as" definition of disability, an individual is considered disabled if he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.A. § 12102(3)(A).  Thus, "a plaintiff need demonstrate only that the employer regarded him as being impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity." Wolfe v. Postmaster Gen., 488 F. App'x 465, 468 (11th Cir. 2012).

10

Here, Martin has provided no evidence that Defendants regarded him as impaired by depression or anxiety. Indeed, Martin admits that "on August 7, 2012, Martin delivered a letter that for the first time informed EFR's decision-making management . . . that Martin allegedly suffered from depression with flare-ups of bi-polar tendencies." (Doc. #43, p. 9.) Martin also admits that Vanderbrook made the decision to terminate him on July 30, 2012, the day EFR received the results of Martin's positive drug test. (Id. at p. 7.) Thus, by Martin's own admission, Vanderbrook did not know of his alleged disabilities until after the allegedly-prohibited termination decision was made.[2] Likewise, Martin concedes that he "did not receive a harsh performance review or any discipline between the time he tested positive for drugs and the time he was terminated." (Id. at p. 11.)

Additionally, while Martin does contend that he mentioned his impairments to a co-worker, he does not allege that the co-worker was involved in any discrimination against Martin and she did not testify that she had any knowledge of his depression or anxiety.

---

[2] In his response to Defendants' motion for summary judgment, Martin for the first time alleges that Vanderbrook's decision violated his due process rights. (Doc. #43, pp. 24-25.) However, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, the Court will not consider Martin's due process allegations.

(See Doc. #39-11.)  Similarly, Vanderbrook testified that he "never thought [Martin] suffered from any alleged disability or needed any accommodations" and that prior to his receipt of Martin's August 7, 2012 letter, "nobody, including Martin, ever reported to [Vanderbrook] that Martin claimed to be disabled."  (Doc. #39-8, ¶ 18.)  As a result, there is no evidence in the record that could allow a reasonable jury to infer that Defendants were aware of Martin's alleged disabilities prior to August 7, 2012.  As Martin concedes that Vanderbrook decided to fire him prior to that date, there is no evidence in the record upon which a reasonable jury could infer that Defendants regarded Martin as impaired and took a prohibited action because of that perception.

Accordingly, Martin has not provided evidence that his alleged impairments meet any of the ADA's three definitions of disability and, therefore, the Court finds that a reasonable jury could not conclude that Martin is disabled for the purposes of the ADA.  Thus, Martin's ADA and FCRA discrimination causes of action (Counts One and Two) are dismissed.

**B.   Plaintiff's ADA and FCRA Retaliation Claims (Counts Three and Four)**

For the reasons stated above, the Court will address Martin's ADA and FCRA retaliation claims together.  The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a).  This prohibition is analyzed "under the same

framework . . . employ[ed] for retaliation claims arising under Title VII." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." Id.

Here, Martin cannot satisfy the third prong of his prima facie case. Martin alleges that he was terminated in retaliation for requesting an accommodation for his depression and anxiety. However, it is undisputed that Vanderbrook made the decision to terminate Martin on July 30, 2012 and that Martin's accommodation request was not made until August 7, 2012. (Doc. #43, pp. 7, 9.) Logically, an effect cannot precede its cause and, therefore, Martin cannot establish the necessary causal link between his accommodation request and his termination. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1259 (11th Cir. 2012); see also Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2005) ("[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

Accordingly, Plaintiff's ADA and FCRA retaliation causes of action (Counts Three and Four) are dismissed.[3]

## C. Plaintiff's Racial Discrimination Claims (Counts Five and Six)

Martin alleges that Defendants violated his constitutional right to equal protection by treating him less favorably than Caucasian EFR employees. (Doc. #43, pp. 43-46.) Specifically, Martin contends that Defendants did not terminate Caucasian EFR firefighters who also tested positive for drugs. (Id.) Thus, according to Martin, Defendants' stated reason for his termination—his positive drug test—was mere pretext, and the true reason for his termination was Defendants' racial discrimination. (Id.)

"[D]iscrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII . . . are subject to the same standards of proof and employ the same analytical framework." Bryant v. Jones, 575 F.3d 1281 (11th Cir. 2009). Accordingly, to establish a prima

---

[3] In the interest of completeness, the Court notes that the fact that Vanderbrook made the decision to terminate Martin prior to having knowledge of his alleged disability is independent grounds for dismissal of Martin's ADA and FCRA discrimination claims (Counts One and Two). Additionally, even if Martin could establish prima facie cases, for either his discrimination or retaliation claims, all of Martin's ADA and FCRA claims (Counts One through Four) would be subject to dismissal because Martin does not present any evidence that Defendants' stated non-discriminatory reason for his termination—Martin's illegal drug use—was pretextual. See infra Section II.C.2.

facie case of discrimination based upon disparate treatment, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job." Hall v. Dekalb County, 503 Fed. App'x. 781, 787 (11th Cir. 2013).  "If the plaintiff presents a prima facie case, the employer must offer a legitimate, non-discriminatory reason for the adverse employment action.  If the employer does so, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination." Id.

### 1.   **Martin's Prima Facie Case**

#### a. *Membership In A Protected Class*

According to Martin's affidavit and deposition testimony, he is half African-American and, therefore, a member of a protected class. (Doc. #39-1, p. 130; Doc. #43-1, ¶ 6.) Defendants do not argue that bi-racial individuals are not a protected class.[4] Instead, Defendants contend that Martin is not bi-racial, as evidenced by the undisputed fact that he consistently identified himself as white on his driver's license applications. (See Doc. #39-6.) Martin argues that his decision to identify himself as

---

[4] While the Eleventh Circuit does not appear to have addressed the issue, other district and circuit courts have consistently concluded that bi-racial individuals are members of a protected class. See Moore v. Dolgencorp, Inc., No. 05-CV-107, 2006 WL 2701058, at *4 (W.D. Mich. Sept. 19, 2006) (collecting cases).

white on his driver's license applications was purely the function of not having the option to choose "bi-racial" or select more than one race. (Doc. #43, p. 42.) It is unclear how claiming to be white, even if intentionally false, would make a bi-racial person anything but bi-racial. Nonetheless, Martin's race, and therefore his membership in a protected class, is a disputed issue of material fact. Resolving the dispute in favor of the non-moving Martin, the Court finds that this prong of the prima facie case is met.

### b. An Adverse Employment Action

It is undisputed that EFR terminated Martin, which qualifies as an adverse employment action. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001). Accordingly, this element of the prima facie case is satisfied.

### c. A Similarly-Situated Individual Treated Differently

In support of his allegation that EFR gave preferential treatment to similarly-situated individuals who were not members of his protected class, Martin points to EFR's treatment of Caucasian firefighter Matthew Larlham (Larlham). Like Martin, Larlham tested positive for illegal drugs while working for EFR. (Doc. #39-5, ¶ 25.) However, upon becoming aware of Larlham's illegal drug use, EFR did not terminate him. Instead, EFR chose to send Larlham to EFR's Employee Assistance Program (EAP) for drug rehabilitation. (Id.) According to Martin, he and Larlham are similarly-situated and, therefore, EFR's more favorable

16

treatment of Larlham supports Martin's contention that his termination was racially-motivated.

Defendants do not contest that Larlham and Martin received disparate discipline. Instead, Defendants argue that Martin overlooks a key distinguishing factor between himself and Larlham. Specifically, while Martin did not acknowledge his substance abuse until *after* he was sent for a drug test, Larlham affirmatively disclosed his drug use *before* EFR had reason to suspect he was a drug user. (Doc. # 39-5, ¶¶ 25-26; Doc. #39-8, ¶ 23; Doc. #47, Ex. 1.) Thus, according to Defendants, Larlham and Martin are not similarly-situated because Larlham actively sought help before his drug use was discovered while Martin was caught red handed. Martin acknowledges that EFR became aware of his and Larlham's drug use under different circumstances, but argues that that this is a distinction without a difference.

"Evidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim when the plaintiff has established that the co-employees are in fact similarly situated." Brown v. Sch. Bd. of Orange Cnty., Florida, 459 F. App'x 817, 819 (11th Cir. 2012) (quotation omitted). "To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects. If this is not the case, the different application of workplace rules does not constitute illegal discrimination." Id.

Additionally, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). If a plaintiff identifies a suitable comparator and "proves that he suffered an adverse employment action while his comparator did not, although they both violated the same work rule, this raises an inference that the rule was discriminatorily applied." Id. (quotation omitted).

While it is undisputed that EFR learned of Martin's and Larlham's respective drug use under different circumstances, the Court concludes that a reasonable jury could (but would not have to) reasonably conclude that Martin and Larlham are similarly situated in all relevant respects and that their conduct was nearly identical. Thus, EFR's disparate treatment of Martin and Larlham would allow a jury to infer that EFR's disciplinary rules were discriminatorily applied. Accordingly, for the purposes of Defendants' motion, Martin has established this element of his prima facie case.

### d. A Qualified Individual

To satisfy the final element of his prima facie case, Martin must show that he satisfied EFR's objective qualifications for employment as a firefighter and EMT. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005). Objective qualifications are those that may be established by "evidence that

18

is objectively verifiable and either easily obtainable or within the plaintiff's possession." Id. "Thus, subjective evaluations play no part in the plaintiff's prima facie case. Rather, they are properly articulated as part of the employer's burden to produce a legitimate race-neutral basis for its decision, then subsequently evaluated as part of the court's pretext inquiry." Id.

Defendants contend that Martin is not qualified for his job as a firefighter and EMT because of his undisputed drug use. Defendants argue that illegal drug use is an objective qualification, as evidenced by the Policy. Defendants are correct that the Policy states that "[i]t is a condition of employment to refrain from taking illegal drugs on or off the job." (Doc. #39-5, Ex. D.) However, as demonstrated by EFR's decision not to terminate Larlham despite a positive test, it is clear that illegal drug use does not automatically disqualify someone from working at EFR. Thus, assuming Defendants' decision to terminate Martin was non-discriminatory, it was necessarily based on their subjective review of the circumstances of Martin's positive drug test. Accordingly, Defendants cannot rely on Martin's drug use to defeat his prima facie case. As Defendants present no other argument that Martin is unqualified, the Court concludes that this element of Martin's prima facie case is met.

Accordingly, as Martin has established a prima facie case of racial discrimination, the burden now shifts to Defendants to provide a non-discriminatory reason for Martin's termination.

### 2. Defendants' Non-Discriminatory Reason for Martin's Termination and Martin's Allegations of Pretext

As explained above, Martin can establish a prima facie case of discrimination. Nevertheless, Defendants may be entitled to summary judgment if they "articulate a legitimate reason for the action [they] took against the employee. Once such a reason is articulated, the employee must show that the employer's proffered reason for the adverse action is pretextual." Bailey v. City of Daytona Beach Shores, No. 13-11127, 2014 WL 1088306 (11th Cir. Mar. 20, 2014) (quotations and citations omitted).

Here, Defendants argue that Martin's drug use constitutes a nondiscriminatory reason for his termination. Martin does not dispute that he tested positive for marijuana. (Doc. #43, p. 7.) Martin also concedes that he told Vanderbrook that he smoked marijuana after he was sent for a drug test. (Id.) The Policy grants EFR the discretion to terminate employees who test positive for illegal drugs. (Doc. #39-5, Ex. D.) Accordingly, EFR had a non-discriminatory reason for terminating Martin. Therefore, the burden shifts back to Martin, who must demonstrate that EFR's stated reason for his termination was mere pretext for unlawful discrimination.

The Eleventh Circuit recognizes numerous ways for a plaintiff to demonstrate pretext.  A plaintiff can demonstrate pretext "by identifying such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 872 (11th Cir. 2011) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  A plaintiff can also demonstrate pretext "by showing that the decision maker made discriminatory remarks" as "[s]uch remarks are evidence of pretext because they shed light on the decision maker's state of mind at the time that he made the challenged employment decision." Id. at 872-73.  However, "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext." Id. at 873 (quotation omitted).

Additionally, a plaintiff can "show pretext by demonstrating that the employer did not follow its normal procedures in terminating his employment." Id.  For example, "when an employer has established a progressive discipline policy, a plaintiff may establish pretext by showing that the policy was not followed in his case." Id.  "Nevertheless, if management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext." Id.  Finally, when analyzing a claim of pretext, the Court must keep in mind that "[c]onclusory

allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir. 1996)).

Here, Martin has not presented evidence sufficient to allow a reasonable factfinder to conclude that EFR's stated reason for his termination—his admitted illegal drug use—was a pretext.  In his response to Defendants' motion, Martin's only allegation of pretext is that Martin "was the only mixed-race employee terminated for drug use whereas Caucasian employees have consistently been given a free pass."  (Doc. #43, p. 37.)[5]

Martin's allegations concerning EFR's alleged favorable treatment of Larlham are summarized above.  In addition to Larlham, Martin also points to the testimony of Roberto Medina (Medina), one of Martin's co-workers at EFR, in support of his contention

---

[5] Though not referenced by Martin in relation to his pretext argument, elsewhere Martin has alleged that in 2011 EFR Assistant Chief Mark Wahlig made two racially prejudicial comments directed at Martin.  (Doc. #43, p. 5.)  However, Martin has not alleged that Wahlig was involved in EFR's decision to terminate him. Accordingly, even assuming the comments took place (Wahlig denies making them), they cannot support a finding of pretext because they are the type of "stray remarks that are isolated and unrelated to the challenged employment decision" rejected by the Eleventh Circuit in Ritchie.  426 F. App'x at 873.

that EFR gave other Caucasian employees a "free pass" for positive drug tests. Medina testified that two additional Caucasian EFR employees, Lawrence Nisbet (Nisbet) and Charles Collins (Collins), were not disciplined despite being drug users. (Doc. #43-2, ¶¶ 14-15.) However, Medina concedes that these allegations are based solely upon his belief (id.) and Martin has provided no additional evidence of their veracity. Additionally, in the case of Collins, Medina does not even allege that Vanderbrook or any other member of EFR management had knowledge of the alleged drug use. To the contrary, uncontroverted testimony from EFR's Human Resources Director Linda Conway (Conway) explains that while Nisbet did test positive for Adderall, he was not subjected to discipline because he had a valid prescription. (Doc. #49-1, ¶4.) Similarly, Conway testified that Collins never failed an EFR drug test. (Doc. #39-5, ¶ 29.) Accordingly, Medina's conclusory accusations cannot support Martin's allegation of pretext. See Mayfield, 101 F.3d at 1376.

Martin's only remaining evidence of pretext is: (1) EFR deviated from the Matrix, which prescribes a five-day suspension as the proper discipline for a first-time positive drug test; and (2) Martin was terminated while Larlham was not. While Martin is correct that the Matrix suggests a five-day suspension as the appropriate discipline for an initial positive test, the Matrix is identified as a "guideline" and the Policy specifically states that EFR has the discretion to terminate employees for any failed

drug test. (Doc. #39-5, Ex. D.) Given this discretion, Defendants' alleged failure to follow the progressive discipline policy cannot show pretext. See Ritchie, 426 F. App'x at 873. Moreover, and perhaps most importantly, the Policy also states that employees such as Larlham who request help for substance abuse before they test positive will not be subject to discipline. (Doc. #39-5, Ex. D.) Accordingly, given the differing circumstances through which EFR became aware of Martin's and Larlham's drug use, EFR's decision to retain Larlham but terminate Martin was entirely consistent with its stated disciplinary policies and, therefore, cannot show pretext. See Ritchie, 426 F. App'x at 873.

Martin has produced no evidence suggesting any "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in EFR's decision to terminate Martin for his drug use. Thus, Martin has failed to present evidence sufficient to allow a reasonable jury to reasonably conclude that Defendants' decision to terminate him was pretext for racial discrimination. Accordingly, Martin's racial discrimination causes of action (Counts Five and Six) are dismissed.[6]

---

[6] Accordingly, the Court need not address (1) EFR's argument that Martin's racial discrimination cause of action against EFR should be dismissed for failure to demonstrate a "pattern or practice" of discrimination; or (2) Vanderbrook's argument that he is entitled to qualified immunity.

**D.   Martin's Request For Additional Discovery**

In addition to his arguments on the merits, Martin contends that Defendants are not entitled to summary judgment because additional discovery is necessary pursuant to Fed. R. Civ. P. 56(d).  Under Rule 56(d), "[s]ummary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition."  Smith v. Florida Dep't of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013).  Specifically, Martin notes that Defendants did not file their Second Amended Answer and Statement of Defenses (Doc. #48) until June 25, 2014.  That is, not until after after Martin filed his summary judgment opposition brief.  According to Martin, this warrants additional discovery because Defendants' newly-pled affirmative defenses concern "Martin's drug use as the supposed legitimate business reason for the Defendants' decision to terminate him." (Doc. #50, p. 2.)  Similarly, Martin argues that additional discovery related to Larlham is necessary because Larlham's affidavit (Doc. #47. Ex. 1) was also filed after Martin submitted his summary judgment opposition.  (Doc. #50, p. 2.)

However, Martin was given ample time to conduct discovery concerning both topics.  Defendants' intention to rely on Martin's drug use as a defense has been clear from the moment this case began.  For example, Martin's drug use formed the basis of Defendants' motion to dismiss (Doc. #10), which was filed more than one year ago.  Likewise, Martin cannot plausibly contend that

his knowledge of Larlham's relevancy to this dispute was a recent development.   Indeed, Martin testified at his deposition that he knew that Larlham was not terminated despite a positive drug test because Larlham himself told Martin about the failed test when it occurred in 2012.   (Doc. #39-1, p. 196.)   Accordingly, the Court concludes that Martin was provided a reasonable opportunity to discover information essential to his opposition and, therefore, the Court declines to grant Martin's request for additional discovery or defer consideration of Defendants' motion.

Accordingly, it is now

**ORDERED:**

Defendants' Joint Dispositive Motion for Summary Judgment (Doc. #39) is **GRANTED,** judgment is entered in favor of Defendants, and Plaintiff shall take nothing.   The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   11th   day of July, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record